## GRAHAM, COUNTY AUDITOR FOR GREENWOOD COUNTY, *v.* FOLSOM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 108.    Argued December 8, 1905.—Decided January 8, 1906.

The power of the State to alter or destroy its municipal corporations is not, so far as the impairment of the obligation clause of the Federal Constitution is concerned, greater than the power to repeal its legislation; and the alteration or destruction of subordinate governmental divisions is not the proper exercise of legislative power when it impairs the obligations of contracts previously entered into.

Courts cannot permit themselves to be deceived; and while they will not inquire too closely into the motives of the State they will not ignore the effect of its action, and will not permit the obligation of a contract to be impaired by the abolition or change of the boundaries of a municipality. Where a tax has been provided for and there are officers to collect it the court will direct those officers to lay the tax and collect it from the property within the boundaries of the territory that constituted the municipality.

A suit to compel county officers to levy and collect a tax on property within the county to pay bonds of a municipality is not, under the circumstances of this case, a suit against the State, either because those officers are also state officers, or because the bonds were issued under legislative authority.

THE facts are stated in the opinion.

*Mr. F. Barron Grier* and *Mr. Joseph A. McCullough,* with whom *Mr. J. B. Parks* was on the brief, for plaintiffs in error.

Mr. R. E. L. Mountcastle and Mr. H. J. Haynsworth for defendants in error.

MR. JUSTICE McKENNA·delivered the opinion of the court.

This writ of error brings up for review the judgment of the Circuit Court in mandamus, requiring plaintiffs in error to assess and collect taxes to pay a judgment recovered by defendant in error against Township Ninety-six, for certain bonds issued by it in aid of the Greenville and Port Royal·Railroad Company. In *Folsom v. Ninety Six*, 159 U. S. 611, the bonds were declared valid obligations of the township. In accordance with the opinion in that case judgment was entered in favor of the suing bondholders. Defendants in error are owners of that judgment. The legislation which authorized the issue of the bonds is recited in *Folsom v. Ninety Six*, and need not be repeated at length. We may say, however, that the act incorporating the railroad empowered townships interested in its construction to subscribe for its capital stock such sum as the majority of the voters, voting at an election held for that purpose, might authorize, and it was provided (section 9) that "the county auditor or other officers discharging such duties, or the city or town treasurer, as the case may be, shall be authorized and required to assess annually upon the property of said county, city, town or township such per centum as may be necessary to pay said interest of said sum of money subscribed, which shall be known and styled in the tax book as said railroad tax, which shall be collected by the treasurer under the same regulations as are provided by law for the collection of taxes in any of the counties, cities, towns or townships so subscribing." 19 Stat. S. Car. (1885) 237, 240.

In 1895 South Carolina adopted a new constitution, by which it was provided that the several townships of the State, with names and boundaries as then established, should continue, with power, however, in the legislature, to form other townships or change the boundaries of those established. Art. VII.

This section, by an amendment finally adopted in 1903, was made inapplicable to certain townships, including Ninety-six. It was provided that "the corporate existence of the said townships be, and the same is, hereby destroyed, and all offices in said townships are abolished and all corporate agents removed." 24 Stat. S. Car. (1903) 3.

At the time of the execution of the bonds Township Ninety-six was situated in Abbeville County, and in 1896 the county of Greenwood was organized out of portions of Abbeville and Edgefield Counties, and Township Ninety-six was included in Greenwood County.

The officers of the latter county refused to assess and collect the taxes, contending that they are not officers of the county, but officers of the State, appointed by the Governor of the State, and are termed county officers because assigned to duty in that county, but cannot exercise any function of those offices except as authorized by the laws of the State, and that they have been forbidden by an act of the general assembly of the State to assess or collect taxes for the payment of subscriptions by townships to the building of roads which have not been built. 23 Stat. S. Car. (1899) 78.

Against this defence defendants in error invoke the contract clause of the Constitution of the United States.

As we have seen, the validity of the bonds was decided in *Folsom* v. *Ninety Six, supra;* in other words, they were decided to be the contracts of the township, and that the acts which authorized their issue constituted their obligation. In this the court announced and applied the principle of many cases which are too familiar to need especial citation.

Plaintiffs in error yield to the case of *Folsom* v. *Ninety Six,* but contend that it is open to inquiry what officers, under the act authorizing the bonds, were the corporate agents or officers of the township, and, answering the inquiry, say the county commissioners were such agents and officers, not the county auditor and county treasurer, and that, it is contended, the Circuit Court has so decided. The distinction that plaintiffs

contend for, based on the opinion of the court, is merely verbal.
The court distinguished the duties of the commissioners from
those of the auditor and treasurer, and expressed with empha-
sis the continuing duty of the latter. The court said: "If the
contention that the legislature had the right to destroy the
corporate existence of the township be true, we are neverthe-
less confronted with the fact that the instrumentalities and
means employed by the legislature, in this instance, for the
purpose of enforcing the collection of a tax, are still unim-
paired."

. The purpose of the court, therefore, was to point out the
temporary duties of the commissioners and to emphasize the
permanent duties of the auditor and treasurer as instrumen-
talities of the law, with a continuing power to give its remedy
and protection to the bonds, "independent of the existence of
the township." And there can be do doubt about this from
the words of the statute.

It is further contended that the action of the court in issuing
the writ disregarded article IX of the constitution of 1868,
entitled "Finance and Taxation." Section 8 of the article
provides "That the corporate authorities of counties, town-
ships, school districts, cities, towns and villages may be vested
with power to assess and collect taxes for corporate purposes.
. . . ." And the further limitation of the power of muni-
cipal corporations to levy and assess taxes, expressed in sec-
tion 6, article X, of the constitution of 1895, to wit, "For
educational purposes, to build and repair public roads, build-
ings and bridges, to maintain and support prisoners, to pay
jurors, county officers, and for litigation, quarantine, and court
expenses, and for ordinary county purposes, to support paupers
and pay past indebtedness."

The argument is that "the 'corporate authorities' of the
county cannot be vested with power to assess and collect a tax
for township purposes, nor *vice versa.* That power can only
be delegated to the authorities of the body contracting or
about to contract the debt." And this argument, it is con-

tended, is not opposed to *Folsom* v. *Ninety Six.* There, it is said, the validity of the bonds was established, but it was not decided that the "corporate authorities" of the township might be vested with power to assess and collect a tax to pay them. Here the question is, can the auditor and treasurer, who are state officers, be made to assess and collect a tax which, under the constitution and laws of the State, can only be done by the "corporate authorities" of the township?

Plaintiffs' construction of the case of *Folsom* v. *Ninety Six* is too limited. It takes from the case about all of its value. The case decided that the bonds were issued for corporate purposes and established them as a valid indebtedness of the township. It proclaimed the validity of the laws under which the bonds were issued and made those laws and every part of them the contract with the bondholders. It did not occur to any one to urge that, because the legislature might vest the township authorities with the power to assess and collect taxes, such power could not be vested in county officers. By clear implication the contrary is decided in *State* v. *Whitesides*, 30 S. Car. 579; *State* v. *Harper*, 30 S. Car. 586; *State* v. *Neely*, 30 S. Car. 587. The offices of auditor and treasurer still exist, and through them taxes are assessed and collected in the State of South Carolina. The case at bar is not, therefore, like *Heine* v. *Levee Commission*, 19 Wall. 655, or *Meriweather* v. *Garrett*, 102 U. S. 472, 498. It is like *Von Hoffman* v. *Quincy*, 4 Wall. 535; *City of Galena* v. *Amy*, 5 Wall. 705; *Seibert* v. *Lewis*, 122 U. S. 284; *Mobile* v. *Watson*, 116 U. S. 289, and many others.

But plaintiffs in error urge other defenses: (*a*) By an amendment of the constitution in 1903 the corporate existence of Township Ninety-six was destroyed, its offices abolished and all its corporate agents were removed. (*b*) By an act of the legislature Township Ninety-six was included in Greenwood County. At the time the bonds were issued it was situated in Abbeville County. (*c*) Plaintiffs in error are forbidden by the laws of the State from assessing and collecting taxes for Ninety-

six Township, and have no power to perform the acts enjoined upon them by the judgment of the Circuit Court.

These defenses differ only in form from those which this court held insufficient in the cases to which we have referred, and they acquire no sanctifying power because one of them, or all of them, may be said to rest upon the constitution of the State. This indeed is not denied. It is asserted that the obligation of the contract is unimpaired; that the State has done nothing but exercise an unquestionable right—the right to alter or destroy its corporations.

The power of the State to alter or destroy its corporations is not greater than the power of the State to repeal its legislation. Exercise of the latter power has been repeatedly held to be ineffectual to impair the obligation of a contract. The repeal of a law may be more readily undertaken than the abolition of townships or the change of their boundaries or the boundaries of counties. The latter may put on the form of a different purpose than the violation of a contract. But courts cannot permit themselves to be deceived. They will not inquire too closely into the motives of the State, but they will not ignore the effect of its action. The cases illustrate this. There may indeed be a limitation upon the power of the court. This was seen and expressed in *Heine* v. *Levee Commission,* and *Meriweather* v. *Garrett, supra.* There is no limitation in the case at bar. A tax has been provided for and there are officers whose duty it is to assess and collect it. A court is within the line of its duty and powers when it directs those officers to the performance of their duty; and their objects upon which the tax can be laid. It is the property within the boundaries of the territory that constituted Township Ninety-six.

*Mount Pleasant* v. *Beckwith,* 100 U. S. 514, and *Mobile* v. *Watson,* 116 U. S. 289, are cases in which municipal corporations had incurred indebtedness, and afterward their municipal organization was destroyed and their territory added to other municipalities. It was argued in those cases, as it is argued in this, that such alteration or destruction of the subordinate gov-

ernmental divisions was a proper exercise of legislative power, to which creditors had to submit. The argument did not prevail. It was answered, as we now answer it, that such power, extensive though it is, is met and overcome by the provision of the Constitution of the United States which forbids a State from passing any law impairing the obligation of contracts. See also *Shapleigh* v. *San Angelo,* 167 U. S. 646. And this is not a limitation, as plaintiffs in error seem to think it is, of the legislative power over subordinate municipalities—either over their change or destruction. It only prevents the exercise of that power being used to defeat contracts previously entered into.

It is further contended by plaintiffs in error that this is in effect a suit against the State. The argument to support this contention is that if the auditor and treasurer are not corporate authorities, as it is insisted the Circuit Court decided, they are necessarily "state officers, and, being state officers, this proceeding is an attempt to require of the State the performance of her contract." The reasoning by which this is attempted to be sustained is rather roundabout. It is based in part on distinctions which, it is contended, were made by the Circuit Court, and on the assumption that the Circuit Court decided that the levy of taxes prescribed by section nine of the statute under which the bonds were issued, was a levy by the legislature and the taxing officers state officers. This proceeding hence, it is argued, becomes a proceeding against the State, and "the relief sought is to require of the State the performance of *her contract.*" (italics ours) by the coercion of her officers to the preformance of duties which she has by a statute forbidden. And, it is said, it may be admitted that such statute "is unconstitutional and therefore void," nevertheless the relief asked against the officers is " affirmative official action," which the political body of which they are the mere servants has forbidden them to exercise, and it is not competent for a court to compel them to exercise, because of the immunity of the State from suit under the Constitution of the United States.

To sustain these contentions an elaborate argument is presented and a number of cases are cited. The most direct of the cases are *Louisiana* v. *Jumel*, 107 U. S. 711; *Hagood* v. *Southern*, 117 U. S. 52; *Rolston* v. *Missouri Fund Commrs.*, 120 U. S. 390, 411; *In re Ayers*, 123 U. S. 443; *Pennoyer* v. *McConnaughy*, 140 U. S. 1. It would make this opinion too long to review these cases. Nor is it necessary. It is enough to say that they do not sustain the contentions of plaintiffs in error.

*Judgment affirmed.*