## 11306

### ASKEW, CO. SUPERVISOR v. SMITH *ET AL.*

### (119 S. E., 378)

1. CONSTITUTIONAL LAW—HIGHWAYS—ACT CHANGING HIGHWAY ADMINISTRATIVE OFFICERS HELD NOT TO IMPAIR OBLIGATION OF CONTRACT.—Act March 21, 1923 (33 St. at Large, p. 871), abolishing the Bogansville township highway commission, and devolving all of their duties on the advisory board and the county engineer, does not conflict with Const., Art. 1, § 8, forbidding the enactment of a law impairing the obligations of a contract, as every obligation issued or incurred lawfully by the commission will have to be paid by the authorities on whom the commission's duties have devolved.

2. TOWNS—LEGISLATURE MAY CHANGE SYSTEM OF GOVERNMENT.—Act March 21, 1923 (33 St. at Large, p. 871), abolishing the Bogansville township highway commission, and devolving all of the duties imposed upon them by the act of March 1, 1919 (31 St. at Large, p. 595), under which an election had been had and bonds issued, upon the advisory board and the county engineer, *held* not in conflict with Const., Art. 7, § 11, relating to the incorporation and powers of townships, as the Legislature has power to change a township's system of government.

3. TOWNS—ACT CHANGING HIGHWAY ADMINISTRATIVE OFFICERS NOT IN CONFLICT WITH TOWNSHIP'S POWER TO ASSESS AND COLLECT TAXES.—Act March 21, 1923, (33 St. at Large, p. 871), abolishing the Bogansville township highway commission, and devolving all of their duties upon the advisory board and the county engineer, is not in conflict with Const., Art. 10, § 5, relating to a township's power to assess and collect taxes for corporate purposes, as the highway commission was not the corporate authority of the township, and the General Assembly has not vested them with the power to assess and collect taxes.

4. TOWNS—ACT CHANGING HIGHWAY ADMINISTRATIVE OFFICERS NOT IN CONFLICT WITH CONSTITUTIONAL AMENDMENT RELATING TO TOWNSHIPS'S BONDED INDEBTEDNESS.—Act March 21, 1923 (33 St. at Large, p. 871), abolishing the Bogansville township highway commission, and devolving all their duties upon the advisory board and the county engineer, is not in conflict with Amendment 1921 to Const., Art, 10, § 5, relating to the power of townships in Union County to increase their bonded debt, as this amendment was solely for the purpose of extending the limitation of indebtedness.

5. STATUTES—ACT CHANGING HIGHWAY ADMINISTRATIVE OFFICERS NOT IN CONFLICT WITH CONSTITUTIONAL PROVISION REQUIRING MUNICIPAL CORPORATIONS IN SAME CLASS TO BE SUBJECT TO SAME RESTRICTION.— Act March 21, 1923 (33 St. at Large, p. 871), abolishing the Bogansville township highway commission and devolving all their duties upon an advisory board and the county engineer, is not in conflict with Const., Art. 8, § 1, providing that the powers of municipal corporations of each class shall be defined so that no one shall have any powers or be subject to any restrictions other than the others in the same class, in view of Const., Art. 7, § 11, providing that the General Assembly may provide such system of township government as it shall think proper and may make special provisions for municipal government for the protection of chartered rights and powers.

6. TOWNS—ACT CHANGING HIGHWAY ADMINISTRATIVE OFFICERS NOT IN CONFLICT WITH CONSTITUTIONAL PROVISION REGULATING POWER OF LEGISLATURE WITH REFERENCE TO ISSUE OF BONDS AND ASSESSMENT AND COLLECTION OF TAXES.—Act March 21, 1923 (33 St. at Large, p. 871), abolishing the Bogansville township highway commission, and devolving all the duties imposed on them upon the advisory board and the county engineer, is not in conflict with Const., Art. 10, §§ 6, 13, limiting the purposes for which the General Assembly may authorize counties or townships to issue bonds and providing that the taxes for subdivision of the State shall be levied by the respective fiscal authorities thereof.

Mandamus proceeding in the original jurisdiction of the Supreme Court by J. V. Askew, as Supervisor of Union County, and others, against Hayne P. Smith and others. Petition granted.

Messrs. Young & Long and Jno. K. Hamblin, for Relators, cite: Right of Legislature to abolish an office: 92 S. C., 455; 103 S. C., 10; 103 S. C., 87; 19 S. C., 114; 2 S. C., 81; 82 S. C., 22. County government: 82 S. C., 22; Const., 1895, Art., 7, Sec., 2; 121 S. C., 6; 109 S. C., 9; 61 S. C., 205; 15 A. & E. Enc. L., 953; 82 S. C., 352. Special Act: 77 S. C., 272; 73 S. C., 197; 61 S. C., 205. Ex post facto law: 74 S. C., 519; 50 L. Ed., 464. Procedure: Code Proc., 1912, Sec., 472; Const., 1895, Art., 5, Sec., 4; 60 S. C., 572; 94 S. C., 207; 32 S. C., 5; 66 S. C., 1; 90 S. C., 400; 94 S. C., 207.

*Mr. J. G. Hughes,* for respondents.

October 14, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Proceedings by mandamus in the original jurisdiction of this Court to require the respondents, claiming to be the Bogansville Township Highway Commission in Union County, to turn over the books, records, and money, pertaining to said commission, in their possession, to the relators, the advisory board for Union County.

The relators contend that by an Act of the General Assembly, approved March 21, 1923, (33 St. at Large, p. 871), the Bogansville Township Highway Commission, which will hereinafter be referred to as the "highway commission," was abolished, and all of their duties devolved upon the advisory board.

The respondents contend that said act is unconstitutional and that they are still the legally constituted highway commission, and as such entitled to the possession of said records and to discharge the duties imposed by law upon them.

The decision of the question involved requires a consideration of the Act of March 1, 1919, (31 St. at Large, p. 595), under which the highway commission was organized and the Act of March 21, 1923, purporting to abolish it.

The Act of 1919 provides a "local option" proposition for all of the Townships of Union County except Union Township (which had already, it seems, voted a bond issue), by which it should be determined whether or not township bonds, in each township, to the amount of $150,000 should be issued for road improvement, the proceeds to be expended within the township so voting and issuing bonds; the preservation and disbursement of the proceeds, the improvement of the roads and their maintenance within the township were devolved upon a highway commission, composed of seven

electors and freeholders of the township to be appointed by the Governor, for a stated term of office.

It appears that an election was held in Bogansville Township, under the Act of 1919, which resulted in favor of the issuing of said bonds; that the highway commission was duly organized; that bonds in an unstated amount (but less than one-half of the $150,000) have been issued and sold, and that an additional amount has been issued, but not sold; that the commission has made contracts, built, and improved roads, incurred obligations, and now have outstanding large obligations entered into regularly by them.

The county government of Union County is vested in a supervisor, an advisory board and a county engineer, apparently (Volume 3, Code of Laws A. D. 1922, § 1943 et seq.), although I do not discover in said sections a specific establishment of the advisory board, the number composing it, or their terms of office. This omission appears to have been supplied by the Act of 1923 (33 Stat., 136), which includes the supervisor as a member of the advisory board, and makes it consist of him and four other members named, with stated terms.

The Act of 1923 (33 Stat. 871) purports to abolish the Bogansville Township Highway Commission and to devolve all of the duties imposed upon them by the Act of 1919, upon the advisory board and the county engineer of Union County.

The constitutionality of the Act of 1923 is attacked by the respondents upon the following grounds: (1) That it is in conflict with Article 1, § 8, which prohibits the enactment of a law impairing the obligation of a contract; (2) that it is in conflict with Article 7, § 11, relative to the incorporation of townships; (3) that it is in conflict with Article 10, § 5, relating to the power of townships to assess and collect taxes for corporate purposes; (4) that it is in conflict with the Amendment of 1921 to Article 10, § 5, relating to the power of townships in Union County to

increase their bonded debt, to an amount not exceeding 35 per cent. of the assessed value of property, for highway improvment; (5) that it is in conflict with Article 10, §§ 6 and 13, relating to the assessment, levy, and collection of taxes by townships.

As to the first constitutional objection, namely, that the Act of 1923 is in conflict with Article 1, § 8, which forbids the enactment of a law impairing the obligation of contracts. The Act does not purport to affect a single obligation incurred by the highway commission, as authorized by the Act of 1919. The General Assembly could not consummate such a purpose if it ever existed. Every bond, or other obligation, issued or incurred lawfully by the commission, will have to be paid by the authorities upon whom the duties and obligations of the commission have devolved. The case of *Smith v. Walker,* 74 S. C., 519; 54 S. E., 779, and *Graham v. Folsom,* 200 U. S., 248; 26 Sup. Ct., 245; 50 L. Ed., 464, decide that, even when the corporate existence of a township has been annihilated by a constitutional amendment, the outstanding bonds may be treated as the debt of the territory of which the township was composed, and payment by taxation may be compelled. Certainly a stronger reason exists to sustain the validity of the bonds when the administrative officers only are changed.

As to the second constitutional objection, namely, that the Act of 1923 is in conflict with Article 7, § 11, relating to the incorporation of townships and their powers: The contention is that the Act is an invasion of the township's rights and powers as a corporate body; that it is a usurpation of its corporate functions and renders nugatory the action of the electors in voting the bonds; that it vests the powers of the corporation in alien hands and places its rights under the guardianship of outsiders.

The argument is that since the Constitution has created the township a corporation, and the Act of 1919 has given it the power to issue bonds and expend the money in the

improvements of its highways, the power was intended to be exclusive. The Constitution simply creates the several townships corporations, and does not purport to vest them with any particular powers. On the contrary it delegates to the General Assembly the power to "provide such system of township government as it shall think proper," and, as a matter of course, the General Assembly may change such system when and as often as it may deem proper. Necessarily the provisions of the Act of 1919, conferring the power upon the highway commisison to issue bonds and improve the highways of the township, are *sub modo* a part of a system of township government, and under the express terms of the Constitution that system may be established and changed or even abandoned by the General Assembly at any time.

In *State v. Rhame,* 92 S. C., 455; 75 S. E., 881, Ann. Cas., 1914B, 519, it is said:

"Public officers are created for the benefit of the commonwealth; incumbents have no contract or property right in them, and, unless it be otherwise provided by the Constitution, they are subject entirely to legislative control. Hence, subject to the Constitution, the General Assembly may fix the term, provide for removal, abolish the office, reduce the term, and in every respect control the existence, powers, emoluments, and tenure of public officers."

In *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421, it is said:

"The Legislature may give it [municipality or county] all the powers such a being is capable of receiving, making it a miniature state within its locality; or it may strip it of every power, leaving it a corporation in name only; and it may create or recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all powers usually committed to a municipality."

In *State v. McDaniel,* 19 S. C., 114, it is said:

"Those holding offices created by the Legislature hold

them subject to the Legislative will. The power that creates an office can impose such limitations and conditions upon the manner of filling it, and the tenure, and the exercise of the duties of the office, and may modify, or abolish any of these or the office itself, as its wisdom may dictate, when no provision of the Constitution is contravened in doing so."

In *State v. Hough,* 103 S. C., 87 ; 87 S. E., 436, it is said:

"Those holding offices created by the Legislature, hold them subject to the legislative will. The power that creates an office can impose such limitations and conditions upon the manner of filling it and the tenure, and the exercise of the duties of the office, and may modify or abolish any of these or the office itself, as its wisdom may dictate, when no provision of the Constitution is contravened in doing so."

In *State v. McDaniel,* 19 S. C., 114, it is said:

"A public office, created by Legislative enactment, never escapes from the control of the Legislature; on the contrary, such office exists by sufferance only, as it were. If there be no constitutional inhibition, its powers and duties may be modified or limited as the public interest may require, or the entire office may be abolished at the will of the Legislature."

In *Alexander v. McKenzie,* 2 S. C., 81, it is said:

"The case is, therefore, narrowed down to the single question whether the defendants have such a property in their offices as to be beyond the power of the Legislature to destroy it. * * * The idea of property cannot attach to the power appertaining to a political office, neither can it attach to the obligation that results from the possession of such political power. * * * The prospective salary and other emoluments of a public office are not the property of the officer, nor the property of the State; they are not property at all. * * * It is clear, therefore, the Legislature had full authority to withdraw from the defendants their powers as mayor and alderman, in any mode that might seem most advisable, and it only remains to see whether they have, in fact, done so."

In *Fooshe v. McDonald,* 82 S. C., 22; 63 S. E., 3, it is said:

"It will be found in Article 7 that the Constitution expressly provides that any change that the Legislature might see proper to make in county governments should be lawful."

The argument is specious that the Act of 1923 constitutes a breach of faith with the electors, who voted bonds to be expended by a commission composed of citizens of said township in accordance with the Act of 1919. If, as we have no doubt, the General Assembly had the power to abrogate the system of township government, in a measure, established by the Act of 1919, the electors who voted the bonds are assumed to have acted with knowledge of that power, no estoppel, as it were by contract, could tie the hands of the General Assembly in the exercise of a constitutional power. The argument is also fully answered by the case of *Grocery Co. v. Burnet,* 61 S. C., 205; 39 S. E., 381; 58 L. R. A., 687, where it is declared:

"But the principle of local self-government does not inhere in townships. They have such local rights of government as the Legislature sees fit to confer upon them."

And such as they have taken they may take away.

As to the third constitutional objection, namely, that the Act of 1923 is in conflict with Article 10, § 5, relating to the power of townships to assess and collect taxes for corporate purposes: It will be observed that the power of a township, under this Article, "to assess and collect taxes for corporate purposes," depends upon a grant thereof by the General Assembly.

"The corporate authorities of * * * townships, * * * may be vested with the power to assess and collect taxes for corporate purposes."

The objections under consideration assume two propositions, neither of which can be maintained: (1) That the highway commission is the corporate authority of the township; and (2) that the General Assembly has vested it with

the power to assess and collect taxes. The highway commission is nothing more than the authorized agent of the township to carry out the purposes of the Act. The General Assembly has nowhere vested it with the power to assess and collect taxes. The provision in the Act is that—

"There shall be levied annually on the property in said township a tax sufficient to pay the interest on these bonds and to pay one-fortieth or more of the principal."

—which means of course a levy and collection by the Auditor and Treasurer of the County. So that it appears that the Act has neither vested the highway commission with the power to assess and collect taxes, nor taken that power from it and conferred it upon the advisory board.

As to the fourth constitutional objection, namely, that the Act of 1923 is in conflict with the Amendment of 1921, Art. X, § 5, relating to the power of townships in Union County to increase their bonded debt, to an amount not exceeding 35 per cent. of the assessed value of property, for highway purposes: The amendment referred to was intended solely for the purpose of extending the limitations of 8 per cent. to 35 per cent., in the townships named, including Bogansville. It is inconceivable that an act which made a change in the authorities representing the townships, who were charged with the duty of issuing the bonds and disbursing the proceeds, would in any sense affect the power of the townships to vote bonds or increase their bonded indebtedness.

In connection with this objection, the respondents insist that the Act of 1923 is in conflict with Article 7, § 1, which, in refering to municipal corporations, provides:

"The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class."

In the first place the whole trend of the article indicates its application to cities and towns, and not to townships.

12—S. C.—126.

The action of the General Assembly in making a classification of cities and towns, and none of townships, lends color to this construction.

But assuming that it was intended to include townships under the terms "municipal corporations," the respondents are met with the provision of Article 7, § 11, which is:

"The General Assembly may provide such system of township government as it shall think proper in any and all the counties, and may make special provision for municipal government and for the protection of chartered rights and powers of municipalities." *State v. Touchberry,* 121 S. C., 5.

As to the fifth constitutional objection, namely, that the Act of 1923 is in conflict with Article 10 §§ 6 and 13, relating to the issuing of bonds and the assessment, levy and collection of taxes by townships for highway improvement: Section 6 contains a limitation of the purposes for which the General Assembly may authorize counties or townships to issue bonds. If the General Assembly should authorize a township to issue bonds, there is no reason why it could not prescribe the method to be pursued, including the authorization of certain officers to sign the bonds, which would be subject to change at the discretion of the General Assembly; the change would in no wise affect the validity of bonds issued by former authorities or bonds to be issued by the new.

The only pertinent provision of Section 13 is:

"The taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities thereof."

If the contention is that the taxes can be levied only by the highway commission, as the fiscal authorities of the township, it is answered by the case of *Dickson v. Berckmyer,* 67 S. C., 526, which holds that a levy by the General Assembly is sufficient. If that they can be collected only by the highway commission, it is a sufficient answer that no authority is given to them by the Act to collect taxes. The process

is extremely simple: If no change had been made in the Act of 1919, the tax would have been levied by a direction from the highway commission to the Auditor and Treasurer to enter the tax upon their books. After the passage of the Act of 1923, the same direction will be given by the advisory board and engineer, the latter being, *pro hac vice,* the fiscal authorities of the township. See *Dickson v. Berckmyer, supra.*

We think therefore that the Act of 1923 is impervious to the attacks made upon it, and that the petition should be granted; and it is so ordered.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE FRASER (dissenting) : This is a proceeding in the original jurisdiction of this Court to require the Bogansville Township Highway Commission to turn over to the advisory board of Union County and County Engineers the books, records, and money in their possession. The question arises under two Acts of the Legislature, one passed in 1919, and the other passed in 1923.

The Act of 1919 reads:

"Section 1. *Election on Issue of Highway Bonds in Townships of Union County—Second Election upon Petition.*—Be it enacted by the General Assembly of the State of South Carolina, that on the fourth Saturday of March, 1919, there shall be submitted to the qualified electors of the different townships of Union County, except Union Township, the question of issuing one hundred and fifty thousand dollars of coupon bonds, bearing not more than six per cent. interest, for constructing public highways in said respective townships: *Provided,* that the highway commission hereinafter named shall not have the right to spend or sell any more of the one hundred and fifty thousand dollars coupon bonds than is absolutely necessary for the purpose of constructing the said highways and roads. That in a year after 1919, upon a petition of one-third of

the qualified electors of any of the townships that have not
voted for said bond issue, the supervisor shall order an
election, when there shall be submitted to the qualified elec-
tors of said township the question of issuing one hundred
and fifty thousand dollars of coupon bonds, bearing not
more than six per cent. interest, for constructing public
highways in said township: *Provided,* that the highway
commission hereinafter named shall not have the right to
spend or sell any more of the one hundred and fifty thou-
sand dollars coupon bonds than is absolutely necessary for
the purpose of constructing said highway and roads.

"Sec. 2.   *Ballots—Sale of Bonds.*—This election shall
be held under the law governing the holding of general elec-
tions in this State.   The ballot shall be provided according
to law and on one ballot shall be printed the words, 'For
permanent road bonds—Yes'; on the other, 'For permanent
road bonds—No.'   If a majority of the ballots cast in said
election shall be for the issuing of said bonds, the commis-
sioners hereinafter to be provided for, to be known as the
highway commission of said township, shall advertise for
sealed bids on said bonds.   This commission shall have the
right to reject all bids and readvertise for bids until the
bonds are sold.   The expenses of the election ordered here-
under shall be paid out of the general contingent fund of
Union County.

"Sec. 3.   *Term of Bonds—Execution—Tax for Interest
and Sinking Fund.*   Upon acceptance of any bid, the com-
mission shall have printed serial or other coupon bonds to
run not more than forty years, with the right to the Town-
ships of redeeming any or all of them after twenty years.
These Bonds shall be signed by the Chairman and Secretary
of the Commission and the signatures may be lithographed.
The interest on these bonds shall be paid semiannually on
the first day of January and the first day of July in each and
every year, and there shall be levied annually on the prop-
erty in said township a tax sufficient to pay the interest on

these bonds and to pay one-fortieth or more of the principal; the one-fortieth or more mentioned above and surplus accruing after the payment of the interest on said bonds shall be annually paid over by the Treasurer of Union County to the Sinking Fund Commission of the County, to be invested by them in such funds as are recognized in law as proper for the investment of trust funds. The Sinking Fund Commission shall annually furnish to the Circuit Court of Union County an itemized statement of all funds received by it and how the same have been invested, to whom loaned and upon what security. This report shall be filed with the Clerk of said Court.

"Sec. 4. *Deposit of Proceeds of Bond Issue.*—As soon as the funds arising from the sale of said bonds shall be received by the said highway commission they shall be deposited by them in the banks or bank of the township according to and in proportion to the combined capital and surplus of each bank, at a rate of interest not less than four and one-half ($4\frac{1}{2}$) per cent. per annum, to be paid by the bank at the said rate from the date of the said deposit until the said funds are withdrawn from time to time by the said highway commission as needed by them in the performance of their duties under this Act: *Provided,* that should any bank or banks in said township decline to receive such deposit, or if there be no bank in said township, from the proceeds of the sale of said bonds, or decline to pay interest on said deposit at a rate of interest of not less than four and one-half ($4\frac{1}{2}$) per cent. per annum, the *pro rata* of deposits due to such bank or banks so declining or refusing to pay said interest shall be proportioned among all the remaining banks of Union Township in proportion to their combined capital stock and surplus: *Provided, further,* that the highway commission shall withdraw the said funds from the said banks in which same are deposited in an impartial way and yet in so far as possible withdraw such funds pro-

portionately and on the same basis as the deposits are made in said banks.

"Sec. 5. *Highway Commission—Personnel—Organization—Expenses—Term of Office.*—That the highway commission of said township shall consist of seven electors and freeholders within the limits of the said township, who shall be appointed a commission by the Governor upon the recommendation of a majority of the representative delegation of Union County. The said commission shall elect its chairman and secretary and any vacancy in the commission shall be filled by the remaining members. The commissioners shall receive no compensation for their services, but shall be reimbursed for actual expenses incurred in the discharge of their official duties. The life of the commission shall be five years; but it shall expend the funds from the sale of the bonds for the construction of roads within three years, if possible to do so advantageously.

"Sec. 6. *Improvement of Roads—Condemnation.*—The said highway commission shall construct of materials generally approved by expert highway engineers as adapted to building permanent improved highways, by contract or otherwise, in the discretion of the commission, the main public roads and thoroughfares across the township. These thoroughfares shall be thirty feet wide. After constructing or improving the roads or thoroughfares herein referred to, then the commission shall expend any balance of the funds remaining on hand in likewise constructing and improving the main tributary roads leading into such main roads and thoroughfares. Of these roads the commission shall have the power to select which shall be permanently improved, in whole or in part, to decide the width of the same; and the material to be employed, regard being had to the present condition of said road and the amount of traffic over same. They shall further have the right to condemn land, surface, soil, trees or other material adjoining or near to the road for the purpose of relocating, widening, improving or

constructing public highways herein provided for. In case the right of way, surface, soil, trees or other material cannot be secured by donation or agreement, the same may be taken for the uses herein mentioned, and the landowners may afterwards be compensated as in condemnation of rights of way by railroad companies under the laws of this State by way of assessment or damages upon petition of the person, firm or corporation claiming compensation or damages.

"Sec. 7. *Maintenance of Improved Roads.*—It shall further be the duty of the said highway commission to keep the roads constructed or improved by them in proper repair during the life of the said commission and for this purpose it shall receive from the public road tax twelve ($12.00) dollars per mile for each mile of road so constructed or improved by them for the first year, ten ($10.00) dollars per mile for the second year, and eight ($8.00) dollars per mile annually thereafter.

"Sec. 8. *Highway Engineer.*—The said highway commission shall employ a competent Highway Engineer, who shall have the recommendation of the proper department of the United States Government, shall be bonded in the sum of ten thousand ($10,000.00) dollars for the faithful performance of his duties, the premium to be paid out of the funds in the hands of the commission. His duties shall be to locate all roads to be constructed by the commission, to furnish to the said commission estimates of the cost of said construction, to see that the work is properly performed, to approve all bills and claims for work and labor, by contract or otherwise, and that the maintenance of said roads is properly done during the term of his employment.

"Sec. 9. *Records—Reports.*—The said highway commission shall keep a book, open for public inspection at all reasonable times, setting forth all contracts made by it for the construction and maintenance of said permanent roads. They also shall present annually to the Circuit Court of Union County an itemized statement of all funds received

and disbursed by them, and this shall be a part of the records of said Court. At the expiration of the life of said commission all its contracts, papers and books of accounts shall be turned over to the Clerk of Court and filed in his office.

"Sec. 10. *Use of Interest on Deposits.*—All interest accruing on such funds as are deposited by the highway commission in the banks shall be paid by said banks to the Treasurer of Union County every six months, to be computed from the date of original deposit, and the interest so received shall be applied by the County Treasurer to the payment of the interest on the bonds herein authorized in so far as it will pay said interest.

"Sec. 11. *Repealing Clause.*—All Acts and parts of Acts inconsistent with this Act be, and the same are hereby, repealed.

"Sec. 12. *Act Effective on Approval.*—That this Act shall take effect immediately upon its approval by the Governor.

"Approved the 1st day of March, A. D. 1919."

The Act of 1923 reads:

"Section 1. Be it enacted by the General Assembly of the State of South Carolina: That Bogansville Township Highway Commission, in Union County, be, and the same is hereby abolished, and that all the duties imposed upon said Bogansville Township Highway Commission, * * * approved the 1st day of March, 1919, are hereby devolved upon the advisory board of Union County and the county engineer, who shall have all the rights and duties of said Bogansville Township Highway Commission.

"Sec. 2. That all Acts or parts of Acts inconsistent herewith are hereby repealed.

"Sec. 3. This Act shall take effect immediately upon its approval by the Governor."

The respondents refused to comply with the demand and raised several constitutional objections to the Act of 1923:

I. The first objection is that the Act of 1923 impairs the

obligation of the contracts made by the old board. This objection cannot be sustained. A reading of the Act of 1923 clearly shows that the contracts by the old board are not impaired.

II. The second question is: Does the Act of 1923 impair an implied contract with the residents of Bogansville Township? It is very clear that it does. We may take judicial notice of the fact that there is a movement to construct great highways throughout the nation, so that any one may pass from one part of this country to another, and that many states (this State among others) are so constructing their highways as to form a part of this national system of highways. The Act of 1919 was purely local, and gave no notice of any attempt to do anything but to allow the townships of Union County to construct highways in such a manner as to best serve the needs of that township, and, in order to secure that end, the management was put in the control of residents of that particular township. It may be that a wiser course would have been to become a part of the greater scheme, but that proposition has not been submitted to the electors, and the Legislature cannot enlarge the proposition after the election has been held based upon that election.

The other objections need not be considered.

The motion for an order requiring the Bogansville Township Highway Commission to turn over the books, records, and money should be refused.

MR. JUSTICE WATTS concurs.