Earl Benjamin BUSH et al., Plaintiffs,

v.

ORLEANS PARISH SCHOOL BOARD et al., Defendants.

Civ. A. No. 3630.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 4, 1961.

M. Hepburn Many, U. S. Atty., New Orleans, La., for the United States, amicus curiae.

Jack P. F. Gremillion, Louisiana Atty. Gen., George M. Ponder and John E. Jackson, Jr., Asst. Louisiana Attys. Gen., for the State.

RIVES, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.

At its last session, officially labeled the Second Extraordinary Session of 1961, and actually the fifth consecutive sitting since November, the Legislature of Louisiana passed, and her Governor approved, two additional measures designed to subvert the effective desegregation of the New Orleans schools and thwart the implementation of the orders of this court looking to that end.[1] The statutes in question are Acts 3 and 5, the enforcement of which the United States now asks to enjoin.[2]

The legislation takes the form of amendments to the Louisiana Criminal Code. Act 3 purports to create a new crime entitled "Bribery of parents of school children." It punishes giving to, or acceptance by, any parent of "anything of apparent present or prospective value" as an "inducement" to sending his child to a school operated "in violation of any law of this State."[3] The companion crime announced by Act 5 is

1. For the prior history of this litigation, see Bush v. Orleans Parish School Board, D.C.E.D.La., 138 F.Supp. 337, affirmed, 5 Cir., 242 F.2d 156; id., 163 F.Supp. 701, affirmed, 268 F.2d 78; id., 187 F.Supp. 42, affirmed, 365 U.S. 569, 81 S. Ct. 28, 5 L.Ed. 36; id., 188 F.Supp. 916, affirmed, 365 U.S. 569, 81 S.Ct. 28; id., D.C., 190 F.Supp. 861; id., 191 F.Supp. 87. A complete outline of earlier developments is given in Note 1 of the last cited opinion.

2. The United States appears as *amicus curiae.* See Bush v. Orleans Parish School Board, E.D.La., 191 F.Supp. 87.

3. The full text of Act 3, as it is proposed to be inserted in the Criminal Code, is as follows:

"§ 119.1. Bribery of parents of school children.

"Bribery of parents of school children is the giving or offering to give, directly or indirectly, any money, or anything

labeled "Intimidation and interference in the operation of schools." Here, in rather strange language, the conduct condemned is "the offering to do or doing of any act * * * to" a child or parent, teacher or other school employee, which may influence that person "to do or perform any act in violation of any law of this state." [4] Both statutes grant immunity from prosecution and promise a monetary reward to informers.

With commendable frankness, Louisiana's Attorney General admits that these enactments are probably invalid, being too vague and indefinite to define a crime.[5] But he insists that this is nei-

---

of apparent present or prospective value to any parent, to any tutor or guardian, to any person having legal or actual custody of, or to any person standing in loco parentis to, any child eligible to attend a public school in this State, as an inducement to encourage, influence, prompt, reward or compensate any such person to permit, prompt, force, or cause any such child to attend any such school in violation of any law of this State.

"The acceptance of, or the offer to accept, directly or indirectly, any money, or anything of apparent present or prospective value, by any such person under any such circumstances, shall also constitute bribery of parents of school children.

"Whoever commits the crime of bribery of parents of school children shall be fined not less than five hundred dollars, nor more than one thousand dollars, and imprisoned for not more than one year.

"In the trial of persons charged with bribery of parents of school children, either the bribe-giver or the bribe-taker may give evidence, or make affidavit against the other, with immunity from prosecution in favor of the first informer, except for perjury in giving such testimony.

"Any fine imposed and collected from the convicted person or persons under the provisions of this Section shall be paid to the informer or informers who shall give information resulting in the conviction of said person or persons. No penalty imposed under the provisions of this Section shall be suspended or remitted by any court."

4. Act 5, in pertinent part, reads:
   "Section 122.1. Intimidation and interference in the operation of schools.
   "Intimidation and interference in the operation of public schools is the offering to do or doing of any act, or threatening to do any act, directly or indirectly, to any child enrolled in a public school, to any parent, tutor or guardian, or person having lawful custody of or standing in loco parentis to any such child, the purpose and intent of which is to intimidate, induce, influence, reward, compensate or cause any such person, or any school teacher, school principal, transfer operator, or any other school employee, to do or perform any act in violation of any law of this state.

   "Whoever commits the crime of intimidation and interference in the operation of schools shall be fined not less than five hundred dollars, nor more than one thousand dollars, and imprisoned for not more than one year.

   "In the trial of persons charged with public intimidation and interference in the operation of schools, either the person doing or offering to do or the person or persons sought to be influenced, coerced, intimidated, threatened, or forced, may give evidence, or make affidavit against the other, with immunity from prosecution in favor of the first informer, except for perjury in giving such testimony.

   "Any fine imposed and collected from the convicted person or persons under the provisions of this Section shall be paid to the informer or informers who shall give information resulting in the conviction of said person or persons. No penalty imposed under the provisions of this Section shall be suspended or remitted by any court."

5. The principle is well established in Louisiana that a criminal enactment which is so vague and indefinite as to fail properly to inform the public of the conduct sought to be prohibited is null as violative of the Louisiana Constitution of 1921, Article 1, Section 10, LSA–Const. See City of Shreveport v. Moran, 174 La. 271, 140 So. 475; State v. Truby, 211 La. 178, 29 So.2d 758; State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Kraft, 214 La. 351, 37 So.2d 815; City of Shreveport v. Brewer, 225 La. 93, 72 So.2d 308; State v. Murtes, 232 La. 486, 94 So.2d 446; State v. Christine, 239 La. 259, 118 So.2d 403 (on rehearing). See also, State v. Gaster, 45 La.Ann. 636, 12 So. 739 (decided under similar provisions in the Louisiana Constitution of 1879); State v. Comeaux, 131 La. 930, 60 So. 620 (Constitution of

ther the time nor the place to challenge them. He would prefer the test to come in a state court after an accused has been arrested, held and charged under authority of the statutes here assailed. Such a person, he argues, would have a better standing to contest the constitutionality of these measures, and, since a ruling striking them down can confidently be predicted from the Louisiana courts, we are urged to spare ourselves this unnecessary chore.

■■ True, "it is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." [6] Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324. And this principle has special force when application is made to a federal court to enjoin the enforcement of state criminal statutes, for then considerations of comity add their weight to suggest abstention. Beal v. Missouri Pacific R. Co., 312 U.S. 45, 49–50, 61 S.Ct. 418, 85 L.Ed. 577. See also, Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152. But the rule cannot be applied mechanically. N. A. A. C. P. v. Bennett, 360 U. S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375; cf. Doud v. Hodge, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577. Special circumstances will sometimes compel a federal court to act. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070; Hague v. Committee Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; see Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 68 L.Ed. 596;

Spielman Motor Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322; Beal v. Missouri Pacific R. Co., supra, at page 50, 61 S.Ct. 418; Douglas v. City of Jeannette, supra, at page 163, 63 S.Ct. 882; Denton v. City of Carrollton, Georgia, 5 Cir., 235 F.2d 481, 484–485. This is such a case.

■ The challenged statutes are not ordinary criminal provisions. They constitute special legislation, passed as "emergency" [7] measures to accomplish a specific purpose. Placed in context, their mission is all too clear. These are the invidious weapons of a state administration dedicated to scuttling the modest program of desegregation which has been initiated in Orleans Parish. The plain intent of the measures is to publish a threat of imprisonment against all who would have any dealings with an integrated school. Whether or not prosecution is ever attempted under these provisions, the obvious hope of the sponsors is that the mere promulgation of the statutes will accomplish the desired end. Thus, the effect is immediate. The harm has already begun. In these circumstances, there can be no question of postponing decision

■ Nor can there be any doubt as to the unconstitutionality of these acts. They are revealed as but another effort to circumvent the orders of the court issued pursuant to the mandate of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.[8] Constitutionally unable to require racial segregation in the public schools, arrested in its plan to close the integrated schools, and unsuc-

---

1898); City of Shreveport v. Wilson, 145 La. 906, 83 So. 186 (Constitution of 1913).

The Federal Constitution likewise guarantees against vagueness in the state criminal laws. See Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840.

6. Of course, since no prosecution is now pending in the state courts, the prohibition of 28 U.S.C. § 2283 does not apply. Nor does the rule that federal courts will not intervene to assure re-

spect for procedural due process in the conduct of a state criminal trial.

7. Acts 3 and 5 were both certified by the Governor as "emergency legislation" under Art. 3, § 27, of the Louisiana Constitution. The effect of this certification is to dispense with the normal delays and make the measure effective immediately upon the Governor's approval.

8. See Bush v. Orleans Parish School Board, D.C.E.D.La., 188 F.Supp. 916; id., 191 F.Supp. 87.

cessful in its boycott of these schools by other means, the State has now marshalled the full force of its criminal law to enforce its social philosophy through the policeman's club.

It is argued, however, that we read too much in the statutes. We are told that these laws have no connection with segregation; that the reference to schools operated "in violation of any law of this State" does not mean desegregated schools. It cannot be, so the argument goes, because this court has voided all laws requiring or permitting segregation of the races in public education.

Of course, the circumstances under which these measures were adopted belie any such claim of innocence. The Legislature clearly wants parents and teachers, and other interested persons, to understand that they will be punished if they have any contact with an integrated school. Yet, it would play tricks with the court and pretend it had meant nothing of the kind. "But courts cannot permit themselves to be deceived. They will not inquire too closely into the motives of the state, but they will not ignore the effect of its action." Graham v. Folsom, 200 U.S. 248, 253, 26 S.Ct. 245, 247, 50 L.Ed. 464. Moreover, in this instance, the Legislature has explained its meaning for all to hear. We need not probe the public mind to learn what was intended by "the law of the State." We have but to listen to its official voice to learn that "the law of the State" is Louisiana legislatese for segregation.

Thus, in the acts of the First Extraordinary Session of 1960 providing for the closure or boycott of desegregated schools, the euphemism "operated contrary to the Constitution and laws of this State" was used to describe the offending facilities.[9] There was no doubt then what was intended, and there can be less now after the constant reiteration of

that chant. It is true these statutes were voided on November 30, 1960,[10] but the Legislature did not acquiesce in this ruling. On the contrary, shortly after the decision, it solemnly proclaimed that: "the public policy of the State of Louisiana, as expressed and declared in Act No. 2 of the First Extraordinary Session of 1960, and in all other Acts and Resolutions declaring, establishing and implementing the public policy of this State in respect to interposition and segregation of the races in the public school system, be and said public policy is hereby Reaffirmed and again declared to be the public policy of the State of Louisiana." H.Conc.Res. 26, 2d Ex.Sess.1960. Accordingly, we must assume that "laws of the State" means here what it meant there.

Nor is this all. Twice during the Second Extraordinary Session of 1960 the Legislature commended parents who had withdrawn their children from the two desegregated schools of New Orleans, specifically declaring that they were thereby demonstrating "their will to support the constitution and laws of this state." H.Conc.Res. 1 and S.Conc.Res. 1, 2d Ex.Sess.1960. Similarly, in a later resolution defending its own officers cited for contempt for refusing to authorize payment of teachers at these two schools, it asserted such payments "would have been in violation of the Constitution and laws of the State of Louisiana." H.Conc. Res. 8, 3d Ex.Sess.1960. And, finally, during the very session at which the statutes in suit were passed, the Legislature formally proclaimed its view that the two desegregated schools of New Orleans were "operating in violation of the provisions and principles of the State Constitution and laws  *  *  *." H. Conc.Res. 22, 2d Ex.Sess.1961.

The subterfuge will not avail. Unmasked for what they are, Acts 3 and 5

---

9. For a catalog of these statutes, see Bush v. Orleans Parish School Board, D.C.E.D.La., 188 F.Supp. 916, 936, Appendix B.

10. Bush v. Orleans Parish School Board, D.C.E.D.La., 188 F.Supp. 916, affirmed, 365 U.S. 569, 81 S.Ct. 28, 5 L.Ed. 36.

are unconstitutional on their face and must be enjoined.

## Temporary Injunction

This case came on for hearing on motions of the United States, amicus curiae, for temporary injunction, restraining the enforcement of Acts 3 and 5 of the Second Extraordinary Session of the Louisiana Legislature for 1961.

■ It being the opinion of this court that all Louisiana statutes which would directly or indirectly require segregation of the races in the public schools, or interfere with the operation of such schools, pursuant to the orders of this court, by the duly elected Orleans Parish School Board, are unconstitutional, in particular, the aforesaid Acts 3 and 5;

It Is Ordered that the Honorable Jimmie H. Davis, Governor of Louisiana, the Honorable Jack P. F. Gremillion, Attorney General of the State of Louisiana, Murphy J. Roden, Director of Public Safety of Louisiana, Richard A. Dowling, District Attorney of Orleans Parish, Louis A. Heyd, Jr., Criminal Sheriff of Orleans Parish, deLesseps S. Morrison, Mayor of the City of New Orleans, Joseph I. Giarrusso, Superintendent of Police of the City of New Orleans, their successors, agents, and representatives, and all other persons who are acting or may act in concert with them, be, and they are hereby, restrained, enjoined and prohibited from enforcing or seeking to enforce by any means the provisions of Acts 3 and 5 of the Second Extraordinary Session of the Louisiana Legislature for 1961, and from otherwise interfering in any way with the operation of the public schools for the Parish of Orleans by the duly elected Orleans Parish School Board, pursuant to the orders of this court.

It Is Further Ordered that copies of this temporary injunction shall be served forthwith upon each of the defendants named herein.

Inasmuch as this temporary injunction is issued on the motions of the United States, no bond is required. 28 U.S.C. § 2408.