Earl Benjamin BUSH et al., Plaintiffs,

v.

**ORLEANS PARISH SCHOOL BOARD**
et al., Defendants.

Civ. A. No. 3630.

United States District Court
E. D. Louisiana,
New Orleans Division.
Dec. 21, 1960.

A. P. Tureaud, New Orleans, La., for plaintiffs.

M. Hepburn Many, U. S. Atty., New Orleans, La., for United States, amicus curiae.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish School Board, Board Members Lloyd Rittiner, Louis G. Riecke, Matthew R. Sutherland and Theodore H. Shepherd, Jr., and Dr. James F. Redmond, Superintendent of Orleans Parish Schools.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Michael E. Culligan, John E. Jackson, Jr., Weldon Cousins, Henry J. Roberts, Jr., Asst. Attys. Gen., for Jack P. F. Gremillion as Louisiana Attorney General, A. P. Tugwell as State Treasurer, Shelby M. Jackson as State Superintendent of Education, Members of the State Board of Education, and Roy H. Theriot as State Comptroller.

Monroe & Lemann, J. Raburn Monroe, New Orleans, La., for Whitney Nat. Bank of New Orleans.

Phelps, Dunbar, Marks, Claverie & Sims, Louis B. Claverie, New Orleans, for Hibernia Nat. Bank in New Orleans.

Sehrt & Boyle, Clem H. Sehrt, New Orleans, La., for National American Bank of New Orleans.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, George Denegre, New Orleans, La., for National Bank of Commerce in New Orleans.

Alvin J. Liska, New Orleans City Atty., Joseph Hurndon and Ernest L. Salatich, Asst. City Attys., New Orleans, La., for City of New Orleans.

W. Scott Wilkinson, Shreveport, La., Gibson Tucker, Jr., New Orleans, La., for Edward LeBreton and Seven Others Constituting the Committee of Eight of the Legislature of Louisiana.

RIVES, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.

PER CURIAM.

In these proceedings, we consider again [1] the progress of desegregation in the public schools of the Parish of Orleans and the additional efforts made to interfere with that achievement. Be-

---

1. The Orleans Parish school desegregation controversy has been in the federal courts for eight years.

In 1954, the state adopted a constitutional amendment and two segregation statutes. LSA–Const. art. 12, § 1; LSA–R.S. 17:81.1, 17:331 et seq. The amendment and Act 555 purported to re-establish the existing state law requiring segregated schools. Act 556 provided for assignment of pupils by the school superintendent. On February 15, 1956, this court held that both the amendment and the two statutes were invalid. The court issued a decree enjoining the School Board, "its agents, its servants, its employees, their successors in office, and those in concert with them who shall receive notice of this order" from requiring and permitting segregation in the New Orleans schools. Bush v. Orleans Parish School Board, D.C., 138 F. Supp. 337, 342, affirmed 5 Cir., 242 F.2d 156, certiorari denied 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436.

Not only was there no compliance with that order, but immediately thereafter the Legislature produced a new package of laws, in particular Act 319 (1956), LSA–R.S. 17:341 et seq. which purported to "freeze" the existing racial status of public schools in Orleans Parish and to reserve to the Legislature the power of racial reclassification of schools. On July 1, 1958, this court refused to accept the School Board's contention that Act 319 had relieved the Board of its responsibility to obey the desegregation order. In the words of the court, "Any legal artifice, however cleverly contrived which would circumvent this ruling [of the Supreme Court, in Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873] and others predicated on it, is unconstitutional on its face. Such an artifice is the statute in suit." Bush v. Orleans Parish School Board, D.C., 163 F.Supp. 701, 702, af-

firmed, 5 Cir., 268 F.2d 78. See also, Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

Nevertheless, the Legislature continued to contrive circumventive artifices.

In 1958 a third group of segregation laws was enacted, including Act 256, LSA–R.S. 17:336, which empowered the Governor to close any school under court order to desegregate, as well as any other school in the system. In the first court test of this law it was struck down as unconstitutional by this court on August 27, 1960. Bush v. Orleans Parish School Board, D.C., 187 F.Supp. 42.

On July 15, 1959, the court ordered the New Orleans School Board to present a plan for desegregation, Bush v. Orleans Parish School Board, No. 3630, but there was no compliance. Therefore, on May 16, 1960, the court itself formulated a plan and ordered desegregation to begin with the first grade level in the fall of 1960.

For the fourth time, in its 1960 session, the Legislature produced a packet of segregation measures, this time to prevent compliance with the order of May 16, 1960. Four of these 1960 measures—Acts 333, 495, 496 and 542, LSA–R.S. 17:337, 17:348.1 et seq., 17:347.1 et seq., 17:170—and the three earlier acts referred to above—Act 555 of 1954, Act 319 of 1956 and Act 256 of 1958—were declared unconstitutional by a three-judge court on August 27, 1960, in the combined cases of Bush v. Orleans Parish School Board and Williams v. Davis, and their enforcement by "the Honorable Jimmie H. Davis, Governor of the State of Louisiana, and all those persons acting in concert with him, or at his direction, including the defendant, James F. Redmond," was enjoined. Bush v. Orleans Parish School Board, D.C., 187 F. Supp. 42, 45. At the same time, the effective date of the desegregation order was postponed to November 14, 1960.

cause of what has been said and done by the government of Louisiana in all its branches, it becomes necessary to restate the fundamental principles that govern this controversy. Under the circumstances, they cannot be declared too often or too emphatically. These principles are:

■ 1. That equality of opportunity to education through access to non-segregated public schools is a right secured by the Constitution of the United States to all citizens regardless of race or color against state interference. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686.

■ 2. That, accordingly, every citizen of the United States, by virtue of his citizenship, is bound to respect this constitutional right, and that all officers of the state, more especially those who have taken an oath to uphold the Constitution of the United States, including the governor, the members of the state legislature, judges of the state courts, and members of the local school boards, are under constitutional mandate to take affirmative action to accord the benefit of this right to all those within their jurisdiction. U.S.Const. art. VI, cls. 2, 3; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5.

■ 3. That when, notwithstanding their oath so to do, the officers of the state fail to obey the Constitution's command, it is the duty of the courts of the United States to secure the enjoyment of this right to all who are deprived of it by action of the state. Brown v.

Board of Education, 349 U.S. 294, 299–301, 75 S.Ct. 753, 99 L.Ed. 1083.

■ 4. That the enjoyment of this constitutional right cannot be denied or abridged by the state, and that every law or resolution of the legislature, every act of the executive, and every decree of the state courts, which, no matter how innocent on its face, seeks to subvert the enjoyment of this right, whether directly through interposition schemes, or indirectly through measures designed to circumvent the orders of the courts of the United States issued in protection of the right, are unconstitutional and null. Cooper v. Aaron, supra; United States v. Louisiana, 81 S.Ct. 260, denying stay in Bush v. Orleans Parish School Board, (United States v. Louisiana) D.C., 188 F.Supp. 916.

All this has been clear since 1954 when the Supreme Court announced its decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Yet, Louisiana's record since that time has been one of stubborn resistance.[2] With singular persistence, at every session since 1954, its Legislature has continued to enact, and re-enact, measures directly intended to deny colored citizens the enjoyment of their constitutional right, the most recent and the most flagrant being the interposition declaration of the First Extraordinary Session of 1960 which purports to nullify the right itself. In each instance, this court has patiently examined the legislation and explained the reason why it could not stand. The segregation packages enacted at the Regular Sessions of 1954, 1956, 1958 and

Again, at the First Extraordinary Session of 1960, the Louisiana Legislature adopted a series of measures designed to thwart the orders of this court. Even after integration was an accomplished fact, the Legislature sought to defeat it. On November 30, 1960, this court held Acts numbered 2, 10 through 14, and 16 through 23, LSA–R.S. 49:801 et seq. notes, 17:170 note, 17:349.1 note, 17:349.2 note, 17.354 note, 17:171 note, 40:1379, 17:100.1 note, 17:349.5 note, 17:123, 17:21 note, 17:52.2 note, 17:349.3 note, 17:429 note, as well as House Concurrent Resolutions Nos. 10, 17, 18, 19

and 23, unconstitutional. Bush v. Orleans Parish School Board, D.C.1960, 188 F.Supp. 916.

Undeterred, in its Second Extraordinary Session for 1960, the Louisiana Legislature passed the measures here under consideration.

At this writing the Legislature has entered into an unprecedented third special session, from which another "segregation package" is presumably to be expected.

**2.** See Note **1.**

1960, and at the First Extraordinary Session of 1960, have all been considered in detail.[3] The basis of these rulings is obvious enough. But, when this court, with what no one dare term undue haste, finally set a date for the practical enjoyment of the constitutional right already so long delayed, and invited the School Board of Orleans Parish, where implementation was to begin, to submit a plan of desegregation, a new line of attack was initiated. Orleans Parish and its School Board now became the prime target.

■ The Louisiana Legislature initially enacted measures to deprive the Board of the power to comply with the orders of the court. In consequence, the Orleans School Board offered no suggestions and this court was compelled to devise its own plan of desegregation, admittedly a modest one involving initially only the first grade. On the plea of the Board, the effective date for the partial desegregation of the public schools of New Orleans was delayed two months to November 14, 1960. At length, the Orleans Parish School Board realized its clear duty and announced its proposal to admit five Negro girls of first-grade age to two formerly all-white schools. But for obeying the constitutional mandate and the orders of this court, the Board brought on itself the official wrath of Louisiana. Despite reiterated injunctions expressly prohibiting them from "interfering in any way with the administration of the public schools for Orleans Parish by the Orleans Parish School Board," [4] the members of the Legislature, already called into special, now apparently continuous, session,[5] took every conceivable step to subvert the announced intention of the local School Board and defy the orders of this court. Acts and resolutions were passed to abolish the Orleans Parish School Board and transfer the administration of the New Orleans schools to the Legislature, and when the enforcement of these measures was restrained, four members of the local Board were attempted to be addressed out of office. As we noted in declaring these acts and resolutions unconstitutional,[6] they were of course part of the general scheme to deny the constitutional rights of the plaintiffs here. But, more than that, there was in this legislation a deliberate defiance of the orders of this court issued in protection of those rights. If for no other reason, the measures were void as illegal attempts to thwart the valid orders of a federal court.

■ Against this background, it is nevertheless asserted that the present acts and resolutions, Act 2 [7] and House

---

3. See Note 1.

4. See, e. g., Bush v. Orleans Parish School Board, D.C., 187 F.Supp. 42; Id., D.C. 1960, 188 F.Supp. 916.

5. At this writing, the legislators are in their third successive special session.

6. Bush v. Orleans Parish School Board, D.C.1960, 188 F.Supp. 916.

7. At the outset the defendants represented by the Attorney General of Louisiana, citing Title 28 U.S.Code, § 2284, moved for a stay of these proceedings insofar as they relate to Act 2 of the Second Extraordinary Session of 1960, LSA–R.S. 17:121, on the ground that a state court, in litigation challenging the constitutionality thereof, has issued a temporary restraining order against its enforcement. The action in the state court is a taxpayers' suit seeking, not the enforcement of, but an injunction against the enforcement of Act 2. Since 28 U.S.C. § 2284

requires a stay in this court only where the state court action in which the stay has been granted is a suit to enforce the statute rather than to enjoin its enforcement, that section appears inapplicable here.

If this be deemed a too technical reading of § 2284, still that section has no application here because the stay in state court enjoins the enforcement of only one section of the state statute in question, the section which relates to the appointment of a school board with only fiscal functions. It does not in any way enjoin the meat of the statute, the section providing for the control and operation of the Orleans Parish schools by the Louisiana Legislature rather than the Orleans Parish School Board. It is this latter section which is of primary importance here. Since the state court stay is not broad enough to protect the parties here in suit, § 2284 has no ap-

Concurrent Resolutions 2, 23 and 28, are invulnerably insulated from federal judicial review. Yet they are no different in kind, or in purpose, from those just discussed. Again the plain object of the measures is to frustrate the Orleans Parish School Board in its effort to comply with this court's orders,[8] and, again, the effect of the measures is to defy this court's injunction prohibiting interference with the administration of the local schools by its own elected school board.[9] Thus, Act 2 of the Second Extraordinary Session of 1960 expressly purports to vest primary control of the New Orleans schools in the Legislature itself under the very acts and resolutions already declared unconstitutional by this court, and, for fiscal matters, to create a new board. House Concurrent Resolutions 2, 23 and 28 of the same session attempt to deny the School Board control of its own funds deposited in local banks and warn the banks against honoring the Board's checks. However local in character Act 2 and Resolutions 2, 23 and 28 may appear, since they would discriminate against Negro children through interference with the orders of this court, they are invalid. Gomillion v. Lightfoot, 81 S.Ct. 125; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

Before the court also is the application of the Orleans Parish School Board for a temporary injunction requiring certain banks in the City of New Orleans to honor its checks drawn on its accounts in those banks. Because of the resolutions warning the banks not to recognize the Orleans Parish School Board as such, the banks, pending court direction, have blocked the accounts and refused to honor checks drawn on them by anyone. In addition, the Board asks that the City of New Orleans, as the tax collector for the Board, be directed, by temporary injunction, to remit to the Board the taxes so collected as required by law.

In view of our holding herein that Act 2 and House Concurrent Resolutions 2, 23 and 28 of the Second Extraordinary Session of the Louisiana Legislature of 1960 are invalid, the Orleans Parish School Board, as the duly constituted and elected authority to operate the public schools of New Orleans, is the owner of the bank accounts in question and the proper party to draw checks thereon. By the same holding the City is required to remit to the Board its tax monies.

Finally, the United States, *amicus curiae*, has moved for a temporary restraining order against Act 5 of the Second Extraordinary Session of 1960, LSA–R.S. 42:261. This Act would make the Attorney General of Louisiana counsel for the Orleans Parish School Board, replacing counsel named by the Board. The Attorney General argues that certainly the Legislature has the right to name counsel for a state board which it created, certainly this is a local matter unaffected by any federal constitutional considerations.

plication. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 297, 41 S.Ct. 272, 65 L.Ed. 638. Moreover, and perhaps this should have been mentioned first in order of importance, the state court stay, initially granted at the district court level, has now been "hereby dissolved, recalled and set aside" by the Supreme Court of Louisiana. Singelmann et al. v. Davis et al., La., 125 So.2d 414.

8. The Orleans Parish Board is more than an original defendant in these proceedings. As noted, it is itself under a constitutional duty, and court order, to implement the right in question, and, may assert the right of its wards, the school children of Orleans Parish. Moreover, it has a right to be free from interference in complying with the orders of this court. Unquestionably, this right is a federal right. It will be protected by this court to the full extent of the law. See Brewer v. Hoxie School District No. 46, 8 Cir., 238 F.2d 91.

9. The United States obviously has a vital interest in vindicating the authority of the federal courts. It is therefore appropriate that the Government, as *amicus curiae*, institute proceedings herein to protect the court against illegal interference. Faubus v. United States, 8 Cir., 254 F.2d 797, 804–805.

Unquestionably, the appointment of counsel for the Board is a local matter. If the appointment is not part of the legislative scheme of discrimination, it is insulated from federal judicial review. Cooper v. Aaron, supra. Let us see then what the purpose of Act 5 is, what its effect would be. Gomillion v. Lightfoot, supra.

The Orleans Parish School Board is under the injunction of this court to desegregate the public schools in the City of New Orleans. After several years resistance, it is now making a good faith effort to comply. In this effort it is being harassed by the Louisiana Legislature which has been sitting in successive extraordinary sessions solely for this purpose. During these sessions, the Legislature, in its determination to preserve racial segregation in the Orleans Parish schools, has on four occasions sought to wrest control of the schools from the Board and on one occasion sought to address its majority out of office. The Legislature has also brought financial chaos to the Board through a series of statutes and resolutions denying the Board control of its fisc, one resolution even warning the banks not to honor the Board's checks drawn on its own accounts.

Against this harassment the Board, through its counsel, has sought the protection and the aid of this court in carrying out its orders. In these present proceedings, for example, the Board, through its counsel, has sought the aid of the court in unfreezing its bank accounts so that the salary checks of its employees will be honored. The Attorney General, pursuant to Act 5, has sought to replace counsel for the Board, and without consulting his new client, moved to withdraw the Board's motion against the banks. Thus the purpose of Act 5 becomes clear, if indeed there was ever doubt. Its purpose is to require the Board, in its effort to comply with the orders of this court, to use the opposition's lawyer to protect itself from the opposition. Thus Act 5 is exposed as one of the Legislature's less sophisticated attempts to preserve racial discrimination in the public schools of New Orleans.

The temporary injunction will issue as prayed for, as will the temporary restraining order. Decree to be drawn by the court.