Earl Benjamin BUSH et al., Plaintiffs,

v.

ORLEANS PARISH SCHOOL BOARD
et al., Defendants,

Connie Reed, a minor, by Gerald Rener,
her guardian and next friend, et al.,
Plaintiff-Intervenors.

Civ. A. No. 3630–B.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 3, 1962.

Jack Greenberg, New York City, A. P. Tureaud, Ernest N. Morial, New Orleans, La., James M. Nabrit, III, New York City, for plaintiffs and plaintiff-intervenors.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish School Board.

WRIGHT, District Judge.

Plaintiffs, now supported by 101 additional intervenors, petition this court for further relief in this long pending litigation.[1] The further relief requested is based on plaintiffs' allegations that the defendant, Orleans Parish School Board, has not complied with this court's order of May 16, 1960, with respect to desegregation of the public schools of New Orleans. In addition, they maintain that the segregated schools operated for Negroes by the Board cannot pass the separate but equal test of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256.

[1]. For the prior history of this litigation, see Bush v. Orleans Parish School Board, E.D.La., 138 F.Supp. 337, affirmed, 5 Cir., 242 F.2d 156; id., 163 F.Supp. 701, affirmed, 5 Cir., 268 F.2d 78; id., 187 F.Supp. 42, affirmed, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; id., 188 F.Supp. 916, affirmed, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; id., 190 F. Supp. 861, affirmed, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; id., 191 F. Supp. 871, affirmed, Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed. 2d 1249; id., 194 F.Supp. 182, affirmed, Gremillion v. U. S., 368 U.S. 11, 82 S. Ct. 119, 7 L.Ed.2d 75.

On May 16, 1960, when the defendant failed to file a plan of desegregation [2] of the Orleans Parish schools as ordered by this court, this court filed one. The court's plan simply provides that beginning September, 1960, all children entering the first grade may attend either the formerly all white public schools nearest their homes or the formerly all Negro schools nearest their homes, at their option. There is a further provision for transfers not based on consideration of race.[3]

The Orleans Parish School Board maintains a dual system of segregated schools based on race.[4] This segregation is accomplished by dividing the city geographically into Negro school districts and white school districts based upon the residence and race of the children attending such schools. On the opening of school in September, 1960, instead of complying with the court's desegregation order, the Board announced a testing program [5] for any first grade child electing a school other than the one to which he would be automatically assigned under the Board's segregated system.[6] This program involved four steps consisting of (1) a review of the "transfer" application form and verification of the information contained therein, (2) testing of the petitioning pupils to determine "scholastic aptitude," "intelligence or ability" and "adequacy of pupil's academic preparation or readiness for admission to school or curricula," (3) "test interpretation and personal evaluation to consider" ten listed criteria relating generally to education, psychology, home environment and health, and (4) a "general administrative review and preparation of recommendation to Orleans Parish School Board to consider" all of the information collected, the "choice and interests" of pupil, as well as the possibility or threat of friction or disorder among pupils or others, and the possibility of breach of peace or ill will or economic retaliation within the community.[7] The bulletin announcing the program further provides that pupils permitted to transfer under these procedures and criteria "may be reassigned to the school to which they are assigned by virtue of their place of residence by order of the Orleans Parish School Board if they do not make satisfactory adjustment to the newly as-

2. On February 15, 1956, this court ordered the School Board to desegregate the Orleans Parish public schools "with all deliberate speed." On July 15, 1959, after no action in compliance had been taken, the Board was ordered to file a desegregation plan. To date no Board plan has been filed and it was admitted at the hearing that submission of a plan is not in contemplation. This court will, therefore, continue to order desegregation on an *ad hoc* basis until an acceptable plan for integration of the Orleans Parish schools is forthcoming.

3. The order reads:
"IT IS ORDERED that beginning with the opening of school in September, 1960, all public schools in the City of New Orleans shall be desegregated in accordance with the following plan:
"A. All children entering the first grade may attend either the formerly all white public school nearest their homes, or the formerly all negro public school nearest their homes, at their option.
"B. Children may be transferred from one school to another, provided such transfers are not based on consideration of race."

4. Enrollment in the Orleans Parish schools as of October 18, 1961, is as follows: White 37,845; Negro 55,820.

5. This testing program was promulgated pursuant to the Louisiana Pupil Placement Act. LSA–R.S. 17:101 et seq. The constitutionality of the Act is not attacked in these proceedings.

6. The testing program applied only to the first grade and there only to children requesting "transfer."

7. While these broad criteria were upheld as valid elements of a pupil placement law, Shuttlesworth v. Birmingham Board of Education, N.D.Ala., 162 F.Supp. 372, affirmed, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145, the application of such criteria to deny admittance or transfer on the ground of potential racial disturbance would be improper. Cooper v. Aaron, 358 U.S. 1, 16, 78 S.Ct. 1401, 3 L.Ed.2d 5. See Buchanan v. Warley, 245 U.S. 60, 81, 38 S.Ct. 16, 62 L.Ed. 149.

signed situation."[8] The announcement further requires the separation of pupils by sex in each class desegregated under this program.

An analysis of the test program demonstrates that the Board, instead of allowing children entering the first grade to make an election as to the schools they would attend, assigned all children to the racially segregated schools in their residential areas. Then, after being so assigned, each child wishing to exercise his right to elect pursuant to the court's plan of desegregation was subjected to the testing program. No children other than first grade were required to take the tests. Pursuant to this testing program, four Negro first grade children out of 134 applicants were allowed to "transfer" to the white schools nearest their homes during the school year 1960–61, and eight Negro children of 66 applying successfully overcame the hurdles of the 1961–62 testing program. Consequently, 12 of the 13,000-odd Negro children entering the first grade in the years 1960–61 and 1961–62 were admitted to and are attending "white" schools.

The Board maintains that it was justified in applying the pupil placement law to the desegregation order of this court in an effort to make certain that the children applying to "transfer" were intellectually and psychologically acceptable in the schools they sought to attend. The Board makes no explanation for its failure to test all children seeking to enter the first grade, or any other grade, in an effort to determine whether or not they were intellectually and psychologically acceptable in the segregated schools to which they were automatically assigned. This failure to test all pupils is the constitutional vice in the Board's testing program. However valid a pupil placement act may be on its face, it may not be selectively applied.[9] Moreover, where a school system is segregated,[10] there is no constitutional basis whatever for using a pupil placement law.[11] A pupil placement law may only be validly applied in an integrated school system, and then only where no consideration is based on race.[12] To assign children to a segregated school system and then require them to pass muster under a pupil

8. This portion of the program in effect "repeals" the statutory criteria since it leaves ultimate pupil assignment in the unfettered discretion of the Board. This absence of permissible standards for placement sealed the fate of Louisiana's first pupil placement law. Bush v. Orleans Parish School Board, E.D.La., 138 F.Supp. 337, 341, affirmed, 5 Cir., 242 F. 2d 156. See Thompson v. County School Board of Arlington County, E.D.Va., 159 F.Supp. 567, affirmed, 4 Cir., 252 F. 2d 929.

9. "The admission of thirteen Negro pupils, after a scholastic test, which the white children did not have to take, out of thirty-eight who made application for transfer, is not desegregation, nor is it the institution of a plan for non-racial organization of the Memphis school system." Northcross, et al. v. Board of Education, et al., 6 Cir., 302 F.2d 818. See also Mannings v. Board of Public Instruction, 5 Cir., 277 F.2d 370, 374; Jones v. School Board of City of Alexandria, Virginia, 4 Cir., 278 F.2d 72, 77; Dove v. Parham, 8 Cir., 282 F.2d 256, 258.

10. "Obviously the maintenance of a dual system of attendance areas based on race offends the constitutional rights of the plaintiffs and others similarly situated and cannot be tolerated. * * * In order that there may be no doubt about the matter, the enforced maintenance of such a dual system is here specifically condemned." Jones v. School Board of City of Alexandria, Virginia, supra, 278 F.2d 76.

11. Compare Gibson v. Board of Public Instruction of Dade County, 5 Cir., 246 F.2d 913, 914; id., 272 F.2d 763, 767.

12. "The Pupil Assignment Law might serve some purpose in the administration of a school system but it will not serve as a plan to convert a biracial system into a non-racial one." Northcross, et al. v. Board of Education, et al., supra, p. 821. See also id., p. 822: "Since that decision [Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873], there cannot be 'Negro' schools and 'white' schools. There can now be only schools, requirements for admission to which must be on an equal basis without regard to race."

placement law is discrimination in its rawest form.

The plaintiffs, together with intervenors, also complain of the crowded conditions in the defendant's Negro schools, as compared to the white. The evidence shows that 5,540 Negro elementary school children are on platoon, but no white. The evidence shows further that the average class size in the Negro elementary schools is 38.3 pupils compared to 28.7 in the white,[13] that the pupil-teacher ratio in the elementary schools is 36.0 to 1 for Negro, 26.1 to 1 for white, and that Negro classes are conducted in classrooms converted from stages, custodians' quarters, libraries and teachers' lounge rooms, while similar classroom conditions do not exist in the white schools. Even under the separate but equal test, these inequalities may not be maintained. It would be unconscionable to compel Negroes, 67 years after Plessy v. Ferguson, supra, to continue to submit to these conditions.[14]

■ The Board states that in the next two or three years, when its present building program is completed, most of the platooning and the crowded conditions in the Negro schools will be eliminated. But the Board's projection gives no facts or figures, nor does it make allowance for the increase in the school population to be anticipated, based on the current birth rate. The Board also suggests that in two successive elections property owners of New Orleans have voted down proposals for tax increases to defray the increased cost of operating the public schools in New Orleans, and that this failure has caused the crowded conditions in the Negro schools. Whether New Orleans will have adequate public schools is, of course, the responsibility of her taxpayers. But whatever is provided, inadequate as it is, must at least be made available on an equal basis to all school children.

Generations of Negroes have already been denied their rights under the separate but equal doctrine of Plessy v. Ferguson, supra, and, at the present pace in New Orleans, generations of Negroes yet unborn will suffer a similar fate with respect to their rights under Brown unless desegregation and equal protection are secured for them by this court.

The School Board here occupies an unenviable position. Its members, elected to serve without pay, have sought conscientiously, albeit reluctantly, to comply with the law on order of this court. Their reward for this service has been economic reprisal and personal recrimination from many of their constituents who have allowed hate to overcome their better judgment. But the plight of the Board cannot affect the rights of school children whose skin color is no choice of their own. These children have a right to accept the constitutional promise of equality before the law, an equality we profess to all the world.

■ IT IS ORDERED that the order of this court dated May 16, 1960, be, and the same is hereby, amended to read as follows:

(A) Beginning with the opening of school in September, 1962, all children entering, or presently enrolled in, the public elementary schools of New Orleans, grades 1 through 6, may attend either the formerly all white public schools nearest their homes or the formerly all negro public schools nearest their homes, at their option.

(B) Children may be transferred from one school to another, provided

---

13. The maximum class size for elementary schools prescribed by the Louisiana State Board of Education is 35 pupils. As of October 18, 1961, in the white elementary schools 7.4 per cent of the regular classes had over 36 pupils, while in the Negro elementary schools 75.6 per cent of the classes had over 36 pupils.

14. See Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; Wilson v. Board of Supervisors, E.D.La., 92 F. Supp. 986, affirmed, 340 U.S. 909, 71 S.Ct. 294, 95 L.Ed. 657.

such transfers are not based on considerations of race.

(C) As long as the defendant, Orleans Parish School Board, operates a dual school system based on racial segregation, the Louisiana Pupil Placement Act shall not be applied to any pupil.

Injunction to be drafted by the court.