Earl Benjamin BUSH et al., Plaintiffs,

v.

ORLEANS PARISH SCHOOL BOARD et al., Defendants,

Connie Reed, a minor, by Gerald Rener, her guardian and next friend, et al., Plaintiffs-Intervenors.

Civ. A. No. 3630.

United States District Court
E. D. Louisiana.

May 23, 1962.

A. M. Trudeau, A. P. Tureaud, New Orleans, La., Jack Greenberg, New York City, Ernest N. Morial, New Orleans, La., James Nabrit, III, New York City, for plaintiffs.

William P. Schuler, New Orleans, La., George Ponder, Baton Rouge, La., for Wade O. Martin, Jr., A. P. Tugwell, Shelby M. Jackson, State Board of Education and Individual Members thereof, etc., Colonel Roden, Major General Flemming, and Roy H. Theriot.

Alvin J. Liska, City Atty,, for Mayor of New Orleans.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish School Board.

ELLIS, District Judge.

■ Defendant, Orleans Parish School Board, moves for a new trial of the issues decided by the April 9, 1962, order [1] of this Court, 204 F.Supp. 568 expanding the order of May 16, 1960, to include desegregation of the first six grades of defendant's schools and enjoining the use of the Louisiana Pupil Placement Law [2] in defendant's schools so long

---

[1] The May 16, 1960 order reads:

"IT IS ORDERED that beginning with the opening of school in September 1960, all public schools in the City of New Orleans shall be desegregated in accordance with the following plan:

"A. All children entering the first grade may attend either the formerly all white public school nearest their homes, or the formerly all negro public school nearest their homes, at their option.

"B. Children may be transferred from one school to another, provided such transfers are not based on considerations of race."

The April 9, 1962 order reads:

"IT IS FURTHER ORDERED that the Orleans Parish School Board, its agents, representatives, attorneys, and all other persons who are acting or may act in concert with them, be and they are hereby restrained, enjoined and prohibited from assigning pupils in any manner inconsistent with the following plan:

"(A) Beginning with the opening of school in September, 1962, all children entering, or presently enrolled in, the public elementary schools of New Orleans, grades 1 through 6, may attend either the formerly all white public schools nearest their homes or the formerly all Negro public schools nearest their homes, at their option.[1]

"(B) Children may be transferred from one school to another, provided such transfers are not based on considerations of race.

"(C) As long as the defendant, Orleans Parish School Board, operates a dual school system based on racial segregation, the Louisiana Pupil Placement Act shall not be applied to any pupil."

"[1] This means that each child entering or attending grades 1 through 6 may elect to go to either the white school in his or her residence district or the negro school in his or her residence district as shown on the defendant's maps of the city of New Orleans outlining the school districts for each race."

[2] LSA–R.S. 17:101 et seq.

as defendant maintains a dual school system based on race. Defendant assigns various errors of fact and law in the April 9 order. There is no serious contention in defendant's motion or in its argument before the Court that proper disposition of this motion necessitates the taking of new testimony.[3] In the main defendant challenges the ultimate determinations of fact and law made by this Court on the prior record. A full and extensive trial with adequate briefing was given on first hearing and this Court can find no reason for reopening the hearing.

However, a Rule 59[4] motion for new trial may result in alteration of the findings and judgment without taking new testimony.[5] Moreover, this Court as presently constituted is competent to consider this motion and direct whatever relief or alteration it deems necessary.[6] The peculiar circumstances of this case, necessitating periodic full trials, the constant supervision of the Court,[7] and the ever-present balancing of individual and public interests[8] demand that this Court be able to examine what it must supervise and adjust according to the law and its allowable discretion.

Defendant's first assignment of error is that this Court as previously constituted erred in finding that the separate school facilities provided for white and negro children in Orleans Parish were unequal. Therefore, defendant concludes, expanded desegregation based on such finding is erroneous.[9] The proposition presents the serious question of whether the existence of separate but equal facilities is an allowable consideration in granting delay of desegregation under the "all deliberate speed" test of Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. In the second Brown decision the Supreme Court set down the allowable limits of delay.[10] Among the allowable considera-

3. At the opening of the hearing on motion for new trial, the Court informed counsel that since proper disposition of the case might not necessarily require taking new testimony, the Court would hear argument directed to the merits of the April 9 order as well as the merits of the new trial motion.

4. F.R.Civ.P., 28 U.S.C. Rule 59(a).

5. 28 U.S.C. Rule 59(a).
   * * * On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct entry of a new judgment.

6. Rule 63 F.R.Civ.P.; cf. Sanborn v. Bay (8 Cir.) 194 F. 37 (Presiding District Judge appointed to Circuit Court); See Moore, Federal Practice, vol. 7, § 63.03.

7. Brown v. Board of Education, 349 U.S. 294, 301, 75 S.Ct. 753, 99 L.Ed. 1083.

8. Id. at 300, 75 S.Ct. at 756.

9. It has been suggested that this court found that Orleans Parish Schools were separate and unequal and therefore under Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, there must be immediate total integration. In reality, this Court only ordered expanded integration to three additional grades and not to all schools in Orleans Parish. Complete desegregation would have been the necessary result had this court felt itself constrained to obey the immediate integration rule of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 rather than the "all deliberate speed" rule of Brown v. Board of Education, supra. While the "all deliberate speed" rule does not apply to graduate schools, Florida ex rel. Hawkins v. Board of Control, 350 U.S. 413, 76 S.Ct. 464, 100 L.Ed. 486, it has been the unvarying rule of the Supreme Court for elementary and secondary schools since 1954. Whatever the language of this court in its prior opinion, the order of the court negates the implication that any pre-Brown rule was applied. Furthermore, any suggestion that this court thought that Plessy was still the rule borders on the frivolous. Plessy v. Ferguson is an article of history. The change in the law wrought by Brown v. Board of Education is so thorough that it gives parties who tried their cases before Brown a new trial on well settled principles of res judicata. Christian v. Jemison (5 Cir.) No. 19120 April 25, 1962.

10. "To that end (desegregation) the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision

tion were "problems related to administration, arising from the physical condition of the school plant, the school transportation system, (and) personnel." The implication is clear that where present facilities were incapable of immediate integration because of consequent overcrowding, or where sudden shifting of present pupil allotment would overtax personnel, a school board would be allowed time to work out a plan of physical equalization "on a non-racial basis." However, there is nothing to suggest that a school board could constitutionally continue separate but equal facilities under the umbrella of the "deliberate speed" rule when it is admitted that negroes are living relatively near white schools which are below capacity. It should be noted that the condition of the Orleans Parish Schools is virtually the same as the condition of the schools in the cases which came before the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. The Supreme Court was unequivocal in its expression: "We conclude that in the field of public education the doctrine of 'separate but equal' has no place." Brown v. Board of Education, supra at 495, 74 S.Ct. at 692. The Fifth Circuit in the infancy of desegregation, held that existing separate but equal facilities were not grounds for dismissal of a desegregation suit for prematurity.[11] Defendants do not direct the Court's attention to any case in which separate but equal facilities were an allowable consideration for delay under the "all deliberate speed" mandate, and we can find none. It is not within the power of this

Court to perpetuate a repudiated constitutional doctrine by imposing it as a check rein on a superceding mandate of the Supreme Court.

▮▮▮▮ The Board's second challenge is that it has been complying with the Brown mandate by making a prompt and reasonable start towards desegregation. The Board alleges good faith compliance with the Brown order and concludes that the Board, not this Court, is the one to make plans to effectuate desegregation. A brief history of the law and the history of the case will illuminate the proposition. In the second Brown decision the Supreme Court stated that " * * * the (district) courts will require that the (school boards) make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. *Once a start has been made* the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the (school boards) to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date."[12] (Emphasis supplied). And further: "(The District Courts) will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system."[13] Subsequently in Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5, the Court ordered that " * * * (A) District Court, after analysis of the relevant factors (which, of course, excludes hostility to racial desegregation), might conclude that justification existed for not requiring the pres-

---

of school districts and the attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems." Brown v. Board of Education, supra, 349 U.S. at 300–301, 75 S.Ct. at 756.

11. The District Judge found that Dallas schools were separate but equal and that the Supreme Court's order contemplated that action would take time and that it

would come from the school board and legislature. Hence plaintiffs' suit for a desegregation injunction was dismissed as premature. The Fifth Circuit reversed per curiam. Bell v. Rippy (N.D.Tex.) 133 F.Supp. 811 reversed sub nom. Brown v. Rippy (5 Cir.) 233 F.2d 796, cert. denied, 352 U.S. 878, 77 S.Ct. 99, 1 L.Ed. 2d 79.

12. Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083.

13. Id. at 301, 75 S.Ct. at 756

ent nonsegregated admission of all qualified Negro children. In such circumstances, however, the courts should scrutinize the program of the school authorities to make sure that they had developed arrangements pointed toward the earliest practicable completion of desegregation, and had taken appropriate steps to put their program into effective operation." And finally, "State authorities were thus duty bound to devote every effort toward initiating desegregation and bringing about the elimination of racial discrimination in the public school system." [14] There can be little doubt that the original conception of the Supreme Court was that desegregation would be implemented by the school boards through plans devised by the boards and supervised by the District Courts.[15] The history of desegregation in New Orleans proves that this was not to be the case here.

The implementing decision in Brown was handed down on May 31, 1955. On February 15, 1956, the Orleans Parish School Board was ordered to desegregate with all deliberate speed.[16] When no independent action was taken by the Board, this Court, on July 15, 1959, ordered the Board to file a plan of desegregation by May 16, 1960. When the Board failed to do that, this Court ordered the desegregation under its own plan on May 16, 1960. On August 27, 1960, a three-judge court ordered that the May 16, 1960, order be implemented.[17]

The facts, as they develop, show that the Board, instead of implementing the Court's plan, by allowing each child entering first grade to choose the school nearest his home, at his option, proceeded to assign all white children to white schools and all negro children to negro schools and allowing some negroes to transfer to previously all white schools after processing under the Louisiana Pupil Placement Law and such additional plans as the Board adopted.[18] Furthermore, the Board indicated at the hearing that it did not intend to file any desegregation plan with the Court in its foreseeable future.

It is an irresistable conclusion that the Board has never actually complied with any order of this Court (except as hereinafter shown by recent board action), nor had it ever entered into compliance with the Brown mandate as originally conceived. The Board seeks to excuse itself by referring to the efforts of the Louisiana Legislature to deter desegregation. The Board says that it was occupied with freeing itself from "massive resistance" legislation. While the circumstances may have been more extreme, the Little Rock School Board, faced with virtual civil war, likewise pleaded its good faith efforts at compliance and asked for more time to test Arkansas'

14. Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5.

15. See procedure suggested in Gibson v. Board of Public Instruction of Dade County, Fla. (5 Cir.) 272 F.2d 763, and adopted in Dove v. Parham, E.D.Ark., 181 F.Supp. 504, 183 F.Supp. 389, modified 8 Cir., 282 F.2d 256.

16. Bush v. Orleans Parish School Board (E.D.La.) 138 F.Supp. 337, aff'd 5 Cir., 242 F.2d 156.

17. Ibid., D.C., 187 F.Supp. 42, aff'd. 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806.

18. The final additional criteria appended to the Louisiana Pupil Placement Law states that pupils permitted to transfer to other schools under the Act "may be reassigned to the schools to which they are assigned by virtue of their place of residence by order of the Orleans Parish School Board if they do not make satisfactory adjustment to their newly acquired situation. This Court in its prior opinion properly observed in footnote 8 at page 895:

"8 This portion of the program in effect 'repeals' the statutory criteria since it leaves ultimate pupil assignment in the unfettered discretion of the Board. This absence of permissible standards for placement sealed the fate of Louisiana's first pupil placement law. Bush v. Orleans Parish School Board, E.D.La., 138 F.Supp. 337, 341, affirmed 5 Cir., 242 F.2d 156. See Thompson v. County School Board of Arlington County, E.D. Va., 159 F.Supp. 567, affirmed, 4 Cir., 252 F.2d 929."

brand of massive resistance in the courts. The Supreme Court stated and disposed of the issue as follows:

"We are urged to uphold a suspension of the Little Rock School Board's plan to do away with segregated public schools in Little Rock until state laws and efforts to upset and nullify our holding in Brown v. Board of Education have been further challenged and tested in the courts. We reject these contentions." [19]

While good faith is commendable, it is not a legal position.[20] This in no way seeks to impugn the Orleans Parish School Board which has provided such able leadership in times and places where leadership has been a scarcity. This discussion seeks only to illustrate where the duty and power to formulate plans for desegregation has, by law, come to rest. Within the duty to desegregate and to apply the rule of "all deliberate speed" it is the obligation of this Court to order a specific plan of integration which must be adhered to by the Board.[21] Since it has not been the lot of this case to proceed as the Supreme Court envisioned it would, then it must proceed to the ultimate desegregation of the Orleans Parish Public Schools through court-formulated plans. The Board's good faith efforts have not legally divested this Court of its duty to formulate such a plan.

Very recently (May 14, 1962) the Orleans Parish Public School Board adopted a resolution of compliance with the order of May 16, 1960,[22] and this is the very first affirmative compliance with Brown.

---

19. Cooper v. Aaron, supra, 358 U.S. at 4, 78 S.Ct. at 1403.

20. "One may well sympathize with the position of the Board in the face of the frustrating conditions which have confronted it, but, regardless of the Board's good faith, the actions of the other state agencies responsible for those conditions compel us to reject the Board's legal position." Cooper v. Aaron, supra at 15, 78 S.Ct. at 1408. See also Bush v. Orleans Parish School Board, E.D.La., 188 F. Supp. 916, 929, aff'd, 365 U.S. 569, 81 S. Ct. 754, 5 L.Ed.2d 806.

21. " * * * (It) becomes necessary to restate the fundamental principles that govern this controversy. Under the circumstances, they cannot be declared too often or too emphatically. These principles are:

  *   *   *   *   *

3. "That when, notwithstanding their oath so to do, the officers of the state fail to obey the Constitution's command, it is the duty of the courts of the United States to secure the enjoyment of this right to all who are deprived of it by action of the state. Brown v. Board of Education, 349 U.S. 294, 299–301, 75 S.Ct. 753, 99 L.Ed. 1083." Bush v. Orleans Parish School Board, E.D.La., 190 F.Supp. 861, 864, aff'd. 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806.

22. NOW THEREFORE, BE IT RESOLVED by the Orleans Parish School Board, that:
"1. Having made a prompt and reasonable start, to fully comply with the order of the United States District Court for the Eastern District of Louisiana, to desegregate the public schools of this Parish with all deliberate speed, the Orleans Parish School Board does adopt the following plan for the school year 1962–63:
"A. All children entering the first grade may attend either the school assigned for the white elementary district of his or her residence or the school assigned for the negro elementary district of his or her residence, as said districts have been established by this Board, at their option.
"B. Children may be transferred from one school to another, provided such transfers are not based on considerations of race.
"2. The aforesaid plan is not to be construed as a permanent plan to desegregate the public schools of this Parish, but rather is intended solely as a plan for use during the transitional period necessary for solving varied local problems, the solution of which will require additional time and study.
"3. The Superintendent of Schools is directed to establish dates for the orderly registration of all children desiring to enroll in the first grade of the public schools of this Parish, which said registration date shall be no later than June 6, 1962, and to give full and complete public notice of said registration plan, so that the parents of all of said children will be able to exercise a real and conscious option as to the school they wish their children to attend during the school year, 1962–63.

In its motion for a new trial the Board avers that the Louisiana Pupil Placement Law may be validly applied under the circumstances that heretofore existed in New Orleans. At the outset, the Board observes that the statute is constitutional on its face.[23] No one disputes this and the point was not at issue in the former trial of the case.[24] However, the application of the statute presents quite another case.[25] In New Orleans the statute was used solely for transfer, rather than *assignment* and transfer as required by the statute.[26] The statute was applied solely to negroes and in the context of a bi-racial system. It goes without saying that although "(the) School Placement Law furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner," [27] —

"(the) obligation to disestablish imposed segregation is not met by applying placement or assignment standards, educational theories or other criteria so as to produce the result of leaving the previous racial situation existing as it was before." [28] If pupil assignment cannot be made on the basis of race,[29] it irresistably follows that the prerequisite to assignment may not be applied along racial lines.[30] It does no good to say that the Pupil Placement Law is applied solely to transferees without regard to race when the procedure is so devised that the transferees are always negroes.[31] "If the criteria should be applied only to negroes seeking transfer or enrollment in particular schools and not to white children, the use of the criteria could not be sustained." [32] At this juncture all pretense of constitutional application dissolves.[33]

One issue seems settled beyond question. A Pupil Placement Law, even uniformly applied, does not represent compliance with the order of Brown. "That law (Pupil Placement) and the resolution do no more than furnish the legal machinery under which compliance may be started and effectuated. Indeed, there is nothing in either the Pupil Assignment Law or the Implementing Resolution clearly *inconsistent with a continuing policy* of compulsory racial segregation." [34] An active plan of desegregation is the index of compliance. "Ob-

---

"4. The Superintendent of Schools is further directed to present to this Board the results of the aforesaid registration within 15 days after the completion thereof; and within 30 days thereafter to present to this board, his recommendations for administrative procedures to be used, in implementing the provisions of the plan set forth in this resolution."

23. Shuttlesworth v. Birmingham Bd. of Ed., N.D.Ala., 162 F.Supp. 372, aff'd. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

24. See Bush v. Orleans Parish School Board, E.D.La., 204 F.Supp. 568.

25. "The School Placement Law furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color. We must presume that it will be so administered. *If not, in some future proceeding it is possible that it may be declared unconstitutional in its application.*" Shuttlesworth v. Alabama, supra, 162 F.Supp. at 384, aff'd. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145. (Emphasis added.)

26. The Louisiana Statute requires that it be applied in "assignment, transfer and continuance." LSA–R.S. 17:104.

27. Shuttlesworth v. Birmingham Bd. of Ed., supra, 162 F.Supp. at 384, aff'd. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

28. Norwood v. Tucker, 8 Cir., 287 F.2d 798, 809.

29. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

30. See Cooper v. Aaron, supra, 358 U.S. at 17, 78 S.Ct. at 1409.

31. See Dove v. Parham, 8 Cir., 282 F.2d 256.

32. Jones v. School Board of City of Alexandria, 4 Cir., 278 F.2d 72, 77.

33. See generally, Hamm v. County School Board of Arlington County, 4 Cir., 264 F.2d 945; Hill v. School Board, 4 Cir., 282 F.2d 473, 475; Dove v. Parham, E.D. Ark., 181 F.Supp. 504, 517.

34. Gibson v. Board of Public Instruction, 5 Cir., 272 F.2d 763, 766. Mannings v. Board of Public Instruction, 5 Cir., 277 F.2d 370, 374.

viously the maintenance of a dual system of attendance areas based on race offends the constitutional rights of the plaintiffs and others similarly situated and cannot be tolerated. * * * In order that there may be no doubt about the matter, the enforced maintenance of such a dual system is here specifically condemned." [35] "The Pupil Assignment Law might serve some purpose in the administration of a school system but it will not serve us a plan to convert a biracial system into a non-racial one." [36] "Since that decision, (Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873) there cannot be 'Negro' schools and 'white' schools. There can now be only schools, requirements for admission to which must be on an equal basis without regard to race." [37]

This Court cannot countenance the present application of the Louisiana Pupil Placement Law in the present status of the Orleans Parish Schools. To believe that desegregation can be effected here with all deliberate speed through application of the Pupil Placement Law is indeed no more than "a speculative possibility wrapped in dissuasive qualifications." [38] However, if dual school systems are eliminated and the Pupil Placement Law is administered even-handedly without overtones of race, the constitutional inhibition is alleviated. Once a child is given the opportunity to choose a school on a non-racial basis, he may be segregated according to academic ability. The mechanics of the plan to be constitutionally applied by the Board would also necessitate a dissolution of the dual schools system.

It remains to consider the expanded plan of April 9, 1962. As noted before, the discretion to formulate plans for desegregation has been vested in local officials even if such officials come to be the United States District Court.[39] All such officials are answerable to the Constitu-

tion, the public needs, and physical possibility. A new Court in a case such as this must respond to these demands as it deems wise and proper, whatever may have gone before. It is in the exercise of that considered judgment that this Court views the present state of the record.

This Court is impressed with the magnitude of the administrative problem of suddenly turning tens of thousands of children free to choose their own schools, leaving the School Board to shepherd them into some workable order. However, the Board now finds itself able to accommodate the administration of the schools with the order of May 16, 1960. With this resolution the Orleans Parish School Board starts active compliance with the order of May 16, 1960. While it does not divest this Court of the duty to formulate plans of desegregation, it is a drastic departure from programs of the past. By this the Board supplements good faith with affirmative performance. The Board's formal decision to comply with the orders of this Court coupled with the order handed down this day represents, to the Court's satisfaction, an active plan of desegregation under Brown that will adequately protect plaintiffs' rights as well as the aspirations for order sought by all reasonable men. The order of May 16, 1960, is surely not full compliance with the mandate of Brown. Therefore, as more rational times settle on New Orleans the moment comes to turn our thoughts to "deliberate speed" once again. It is therefore the order of this Court that the order of April 9, 1962, be and the same is hereby modified as follows:

1) The order to desegregate the first six grades by September 1, 1962, is WITHDRAWN

2) Beginning with the opening of school in 1962, every child in the City of New Orleans entering the first grade

35. Jones v. School Board of Alexandria, Virginia, supra, 278 F.2d at 76.

36. Northcross v. Board of Education, 6 Cir., 302 F.2d 818.

37. Id. at p. 898.

38. Dove v. Parham, 8 Cir., 282 F.2d 256, 261.

39. See footnote 21 supra.

may attend the formerly all-white or formerly all-negro school nearest his home, at his option.

3) Each year, beginning with the opening of school in 1963, the children in one additional higher grade beginning with the second grade may attend the formerly all-white or formerly all-negro school nearest his home, at his option.

4) Children may be transferred from one school to another provided such transfers are not based on consideration of race.

5) Beginning in September of 1963 the dual system of separate geographical districts in the 1st and 2nd grades shall be abolished, and each year thereafter as each succeeding higher grade is integrated the dual system shall be abolished contemporaneously therewith.

6) The Louisiana Pupil Placement Law may be applied to any child only where dual school systems based on race have been eliminated and assignments are made without regard to race.